USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ISABELLE MITURA,                                    :
                                                    :
                              Plaintiff,            :
                                                    :          23-CV-2879 (VEC)
              -against-                             :
                                                    :          OPINION
FINCO SERVICES, INC. d/b/a CURRENT,                 :
STUART SOPP, and ALEX SERGIYENKO, in                :
their individual and professional capacities,       :
                                                    :
                              Defendants.           :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

On April 6, 2023, Plaintiff Isabelle Mitura ("Plaintiff") filed this action against

Defendants Finco Services Inc. d/b/a Current ("Current"), Stuart Sopp, and Alex Sergiyenko

(collectively, "Defendants") for interference and retaliation under the Family and Medical Leave

Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and other claims pursuant to 42 U.S.C. § 1981

("Section 1981"), the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.*

("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8–101 *et seq.*

("NYCHRL"), the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA"), and the New York State Pay

Equity Law, N.Y. Lab. Law § 194 *et seq.* ("NYSPEL"). *See* Compl., Dkt. 1.[1] On July 18, 2023,

Defendants moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9

U.S.C. § 2 *et seq.*, and, in the alternative, to dismiss Plaintiff's Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6). Defs. Mot., Dkt. 33. For the following reasons,

Defendants' motion to compel arbitration is DENIED, and Defendants' motion to dismiss is

GRANTED in part and DENIED in part.

---

[1] Plaintiff filed the operative Amended Complaint on June 27, 2023. *See* Am. Compl., Dkt. 23.

# BACKGROUND[2]

## A.  Plaintiff's Leave from Current

Plaintiff, a woman of Korean descent, was employed by Current, a New York-based financial technology company.  Am. Compl. ¶¶ 2, 12, 15.  From June 2021 until her termination in January 2023, Plaintiff served as Head of Talent.  *Id*. ¶¶ 24, 119.  After Plaintiff was diagnosed with breast cancer in June 2022, she notified Alex Sergiyenko, Current's Head of People, that she intended to take FMLA leave.  Am. Compl. ¶¶ 107–08.  Sergiyenko discouraged Plaintiff from taking FMLA leave and suggested that she use unlimited Personal Time Off ("PTO") instead.  Am. Compl. ¶¶ 112–13.  Sergiyenko claimed to give Plaintiff six months of paid leave from August 2022 through January 2023, but he never provided her with FMLA-compliant paperwork.  Am. Compl. ¶ 115.  Plaintiff underwent treatment in Texas, but she alleges Sergiyenko promised she would be able to return to work in New York City after her leave.  *Id*. ¶ 117.

In January 2023, two weeks before Plaintiff was scheduled to return to work, Sergiyenko terminated her employment claiming it was part of a companywide layoff.  Am. Compl. ¶¶ 119–20.  When Plaintiff inquired about the reasons for her dismissal, Sergiyenko stated that the employees who replaced her "had been developing relationships while she was on leave."  *Id*. ¶ 122.  Sergiyenko further claimed that Plaintiff's salary was too expensive, and "the company's cash position had changed." *Id*. ¶ 123.

---

[2]     The well-pled facts alleged in the Amended Complaint are assumed to be true for purposes of evaluating Defendants' motion to dismiss.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The facts are taken from the complaint and any documents incorporated by reference therein.

### B.  Plaintiff's Discrimination Claims

Plaintiff alleges that during her employment at Current she was subjected to "dozens if not hundreds of disparaging remarks" by her direct supervisor, Sergiyenko, and Stuart Sopp, the CEO, based on her gender, age, race and familial status.  Am. Compl. ¶¶ 99–100, 105.  More specifically, Plaintiff alleges that Sergiyenko called her "an old woman," an "old Asian woman," a "Korean Woman," "an old Asian woman with no kids," and a "single woman" on a weekly basis, often in front of her team or other colleagues in the office.  Am. Compl. ¶¶ 99–101.  When Plaintiff suggested Current adopt a menstruation leave policy, Sergiyenko allegedly responded, "[d]o you even still menstruate, Isabelle?" remarking on both her gender and age.  *Id*. ¶¶ 102–03.  Plaintiff further claims that when she told Sergiyenko of her breast cancer diagnosis, he asked whether she got breast cancer because her "breasts were so large."  *Id*. ¶ 109.  Sopp allegedly publicly disparaged Plaintiff in a companywide meeting; after commenting on Sergiyenko's leadership, Sopp stated that "all Isabelle does is laugh and nod her head and agree," playing on the stereotype of the "compliant and servile Asian woman."  *Id*. ¶ 105.

In Spring 2022, Plaintiff reported Sergiyenko's harassment to an HR Manager, who revealed that Sergiyenko had made disparaging comments to another employee based on that employee's ethnicity.  *Id*. ¶ 62–63.  In early 2022, after becoming aware of gender pay disparities, Plaintiff reported these pay gaps to Sergiyenko twice.  *Id*. ¶¶ 72–73, 77, 85.  Plaintiff claims that Sergiyenko planned to terminate her because she complained about the pay gaps, but he waited to do so until he had the cover of a layoff in January 2023.  Pl. Opp. at 23, Dkt. 40.

### C.  Procedural History

Plaintiff brought this action against Defendants for interference and retaliation under the FMLA (Count I), discrimination and retaliation in violation of Section 1981 (Count II),

retaliation in violation of the EPA (Count III), retaliation in violation of the NYSPEL (Count IV), discrimination, harassment and retaliation in violation under the NYSHRL (Count V) and discrimination, harassment, retaliation, and interference under the NYCHRL (Count VI).  Am. Compl. ¶¶ 166–201.  Defendants moved to compel arbitration of Plaintiff's claims.  Defs. Mot. Plaintiff counters that, because the Amended Complaint includes sexual harassment claims, the arbitration agreement is not enforceable due to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401–02, ("EFAA").  Am. Compl. ¶ 162. Defendants contend that, because Plaintiff's sexual harassment claims are "a thinly veiled pleading tactic to circumvent [her] binding arbitration agreement," they should be dismissed under Federal Rule of Civil Procedure 12(b)(6); the Court should compel arbitration of the remaining claims, or in the alternative, dismiss the entire Amended Complaint for failure to state a claim.  Defs. Mem. of Law at 1–2, Dkt. 34.

## DISCUSSION

### I.      Defendants' Motion to Compel Arbitration

#### A.  Legal Standard

Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 establishes "a liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "In resolving a claim that an action must be directed to arbitration under an arbitration agreement, [a] Court must determine: (i) whether the parties entered into an agreement to arbitrate; (ii) if so, the scope of that agreement; (iii) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (iv) if some, but not

all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." *Arnold v. D'Amato*, No. 14-CV-6457, 2015 WL 4503533 at *5 (S.D.N.Y. July 23, 2015) (citing *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008)).

In 2021 the EFAA was enacted to amend the FAA.  In relevant part, it provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).

When a claim in a case alleges "conduct constituting a sexual harassment dispute" as defined by the EFAA, at the election of the party making such an allegation, any pre-dispute arbitration agreement is unenforceable with respect to all causes of action relating to that dispute.  *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023). The EFAA applies only to claims that accrued on or after March 3, 2022, the day it was signed into law.  *Id*. at 550.

The parties dispute whether Plaintiff's claims fall under EFAA.  Defendants argue that to qualify, the sexual harassment claims must be adequately pled to withstand a motion to dismiss pursuant to Rule 12(b)(6), Defs. Mem. of Law at 12–13; Plaintiff argues the sexual harassment claim need only be plausible and need not be able to withstand a Rule 12(b)(6) motion, Pl. Opp. at 6–8.  The Court agrees with Defendants and with every other judge in this District who has decided the issue: to qualify as a "sexual harassment dispute" under EFAA, the sexual harassment claim must be sufficiently pled to survive a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6).  *See Johnson*, 657 F. Supp. 3d at 551; *Yost v. Everyrealm, Inc.*, 657 F.

Supp. 3d 563, 577 (S.D.N.Y. 2023); *Delo v. Paul Taylor Dance Found., Inc.*, No. 22-CV-9416,

2023 WL 4883337, at *4 (S.D.N.Y. Aug. 1, 2023).  As Judge Engelmayer explained in *Yost*,

requiring the sexual harassment claim to be capable of surviving a Rule 12(b)(6) motion

vindicates the statute's purpose of providing sexual harassment claimants with a judicial forum

while also respecting the FAA's well-established mandate that favors arbitration.  *Yost*, 657 F.

Supp. 3d at 586.

### B.   Plaintiff Adequately Alleges a Sexual Harassment Claim Under the NYSHRL and the NYCHRL[3]

In order to survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to

state a claim to relief that is plausible on its face." *Johnson*, 657 F. Supp. 3d at 551 (citation

omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When resolving a motion to dismiss, the Court must

---

[3]      The NYSHRL makes it unlawful for an employer to discriminate against an individual because of an individual's "age, race, creed, color, national origin . . . sex . . . familial status, [and] marital status" among others.  N.Y. Exec. L. § 296(1)(a).

The NYCHRL makes it unlawful discriminatory practice "[f]or an employer . . . , because of the actual or perceived . . . race, creed, color, national origin . . . gender . . . [or] marital status  . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code. § 8–107(1)(a).

The NYCHRL does not distinguish between claims of "discrimination" and "harassment" or hostile work environment, which is a term of art borrowed from the more restrictive Title VII jurisprudence.  *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D. 3d 62, 75 (1st Dep't 2009) ("Despite the popular notion that 'sex discrimination' and 'sexual harassment' are two distinct things, it is, of course, the case that the latter is one species of sex- or gender-based discrimination.  There is no 'sexual harassment provision' of the [NYCHRL] to interpret; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender.").  In other words, a plaintiff states a claim for a violation of the NYCHRL by alleging facts indicating unequal treatment for a discriminatory purpose by an employer, regardless of whether the plaintiff pleads a "hostile work environment," harassment, or other category of discrimination.  *See id.* at 78–79.

assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

    Defendants claim that Plaintiff fails to state a claim for sexual harassment because the Amended Complaint alleges "nothing more than mere sporadic, insensitive comments" that do not suffice to allege adequately a hostile work environment. Defs. Mem. of Law at 11–12. In support of this contention, Defendants cite multiple cases in which courts found allegations of sexual harassment did not meet the "severe and pervasive" standard under Title VII or the standard established by the NYSHRL prior to its amendment in 2019. *Id.* at 12. Those cases are, however, inapposite because the federal "severe or pervasive" standard of liability does not apply to NYCHRL or the post-amendment NYSHRL claims.[4] Under the NYCHRL, a plaintiff must simply show that she was subjected to "unwanted gender-based conduct." *McHenry*, 510 F. Supp. 3d at 66 (citation omitted). The plaintiff "need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her gender.'" *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)). Under the NYSHRL, the plaintiff need only show that she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership in one or more

---

[4]    Until recently, courts applied the same standard to discrimination claims brought under federal law and the NYSHRL. *See Wheeler v. Praxair Surface Techs., Inc.*, No. 21-CV-1165, 2023 WL 6282903, at *10 (S.D.N.Y. Sep. 26, 2023). In 2019, however, New York State amended NYSHRL § 296(1)(h) so that it, like its NYCHRL analogue, should be applied "liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed." N.Y. Exec. L. § 300; *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020). The amended NYSHRL eliminates the requirement that harassing or discriminatory conduct be "severe or pervasive" for it to be actionable; instead, the conduct need only result in "inferior terms, conditions or privileges of employment." *See* N.Y. Exec. L. § 296(1)(h); *Maiurano v. Cantor Fitzgerald Secs.*, No. 19-CV-10042, 2021 WL 76410, at *3 n.2 (S.D.N.Y. Jan. 8, 2021). New York courts have not yet analyzed substantively how the amendment alters standards of liability under the NYSHRL, but, within this District, courts have interpreted the amendment "to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see also Oliver v. City of New York*, No. 19-CV-11219, 2023 WL 2160062, at *19 n.8 (S.D.N.Y. Feb. 22, 2023).

of the[] protected categories." *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sep. 28, 2023).

Accepting the truth of Plaintiff's allegations, the Amended Complaint alleges that Plaintiff was subjected to weekly, degrading comments and insults, including being called "a single woman," an "old woman," and an "old Asian woman with no kids." Am. Compl. ¶¶ 99, 101. When Plaintiff shared her breast cancer diagnosis with Sergiyenko, he asked her whether she got breast cancer because her "breasts were so large." Am. Compl. at ¶ 109. On another occasion, when Plaintiff proposed implementing a menstruation leave policy, Sergiyenko asked her, "[d]o you even still menstruate Isabelle?" in an effort to humiliate her. *Id*. ¶ 103. After commending Sergiyenko's leadership during a companywide meeting, Sopp allegedly added: "all Isabelle does is laugh and nod her head and agree," a not-at-all subtle reference to stereotypes of servile Asian women. *Id*. ¶ 105; Pl. Opp. at 10.

Because the NYCHRL is not a "general civility code," Plaintiff must allege facts from which the Court can plausibly infer that the unwanted conduct was caused by a discriminatory animus. *Rothbein v. City of New York*, No. 18-CV-5106, 2019 WL 977878 at *9 (S.D.N.Y. Feb. 28, 2019) (citing *Mihalik*, 715 F.3d at 110). A discriminatory motive can be shown either by pleading direct evidence of discrimination, including "comments indicating prejudice on account of a protected characteristic," or by pleading facts showing that comparators outside the Plaintiff's group were treated better than Plaintiff. *Bautista v. PR Gramercy Square Condo*., 642 F. Supp. 3d 411, 428 (S.D.N.Y. 2022) (citation omitted). Direct evidence of a discriminatory motive includes comments referring to employees by demeaning stereotypes that "make clear that the employee in question is not truly welcome in the workplace." *Raji v. Societe Generale Americas Secs. LLC*, No. 15-CV-1144, 2018 WL 1363760 at *5 (S.D.N.Y. Feb. 28, 2018)

8

(recognizing a discriminatory motive where plaintiff's superiors repeatedly referred to him by ethnic and homophobic slurs).  Nevertheless, comments that a reasonable person would view as only "petty slights and trivial inconveniences" do not give rise to an inference of discriminatory motive.  *Mihalik*, 715 F.3d at 111.

A factfinder could reasonably find that Sergyienko's weekly disparaging comments, often in front of Plaintiff's team or other co-workers, reflect a discriminatory motive.  Likewise, Sopp's comment that "all Isabelle does is laugh and nod her head and agree," could be reasonably interpreted as indicative of a discriminatory animus.  *See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004) (citation omitted) ("[S]tereotyped remarks can certainly be evidence that gender played a part in an adverse employment decision.").  Additionally, Sopp's comment was made directly after commenting on Sergyienko's leadership, which reasonably gives rise to the inference that Plaintiff was treated "less well" than a white male comparator because of her gender and national origin.  *See Bautista*, 642 F. Supp. 3d at 427.

Taken together, these allegations plausibly state a claim that relates to sexual harassment as required by the EFAA.  *See, e.g.*, *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2020 WL 7342742 at *8  (S.D.N.Y. Dec. 14, 2020) (holding that a supervisor's three comments about the plaintiff's perceived sexual orientation made to embarrass him and "diminish [his] success" were enough to plausibly state a NYCHRL hostile work environment claim); *Carter v. Verizon*, 13-CV-7579, 2015 WL 247344, at *12 (S.D.N.Y. Jan. 20, 2015) (finding a supervisor's repeated touching of the plaintiff's shoulders was "potentially gender-charged" and sufficient to state a hostile work environment claim under the NYCHRL).

### C. There is a Sufficient Nexus to New York to State a Claim Pursuant to the NYSHRL and the NYCHRL

Defendants argue that Plaintiff cannot bring claims under the NYSHRL and the NYCHRL because the Amended Complaint does not adequately allege a sufficient nexus to New York City; Plaintiff was living in Texas when Sergiyenko terminated her employment but was working in New York when the alleged harassment occurred.  Defs. Mem. at 19.

To determine the location of discriminatory acts, courts look to the location "where the conduct had an impact."  *Johnson*, 657 F. Supp. 3d at 556.  In certifying to the New York Court of Appeals a related question regarding a plaintiff who was not yet employed in New York State when the alleged violation occurred, the Second Circuit noted some inconsistencies in how federal district courts and New York State courts have dealt with this issue.  *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 69 (2d Cir. 2023).  Some courts have interpreted the impact requirement to "turn primarily on the plaintiff's physical location at the time of the alleged discriminatory acts" while others have stated that a plaintiff can allege impact by showing that the discriminatory acts affected "the terms, conditions, or extent of [the plaintiff's] employment . . . within the boundaries of New York."  *Id.*  (cleaned up).

Regardless of which test is applied, all of the alleged conduct and comments giving rise to the sexual harassment claim occurred while Plaintiff was working in Current's New York City office.  Pl. Opp. at 12.  *See also Johnson*, 657 F. Supp. 3d at 557 (finding the impact requirement satisfied where some of the alleged conduct happened in the New York City office to which the plaintiff was assigned two weeks a month).  Plaintiff's interim residency in Texas, where she was receiving medical treatment, is irrelevant to the applicability of the NYSHRL and the NYCHRL because all of the alleged sexual harassment occurred while she was working in Current's New York City office.  The Amended Complaint clearly pleads the requisite nexus to

New York City for Plaintiff's claims to come within the ambit of both the NYSHRL and the NYCHRL.

Because Plaintiff has stated a claim for sexual harassment in violation of the NYSHRL and the NYCHRL, the arbitration agreement is unenforceable pursuant to the EFAA.  9 U.S.C. § 402(a).  Defendants' motion to compel arbitration is denied with respect to all claims in the Amended Complaint.  *See Johnson*, 657 F. Supp. 3d at 562.

## II.     Defendants' Motion to Dismiss for Failure to State a Claim

### A.  Legal Standard

As noted *supra*, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).   "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level."  *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

### B.  Plaintiff's FMLA Claims

To state a claim for FMLA interference, a plaintiff must adequately allege: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave [timely] notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was

entitled under the FMLA." *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (citation omitted).

To state a claim for retaliation under the FMLA, a plaintiff must adequately allege that "(1) [s]he exercised rights protected under the FMLA; (2) [s]he was qualified for h[er] position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of retaliatory intent." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 513 (S.D.N.Y. 2016).

### 1. Plaintiff Has Stated a Claim for FMLA Interference Against Current and Sergiyenko

Defendants argue that Plaintiff cannot allege a prima facie claim for FMLA interference because she was not denied any benefits under the FMLA; she was granted leave far exceeding the maximum twelve weeks of leave required under the FMLA. Defs. Mem. at 13–14. According to Defendants, Plaintiff took three months of FMLA leave, followed by three additional months of unprotected leave. *See id*. at 14–15. The Amended Complaint alleges that, despite Plaintiff requesting FMLA leave, Sergiyenko told her she did not need to use FMLA leave, "encouraged her to use unlimited PTO time instead," and "rebrand[ed] her medical leave as PTO." Am. Compl. ¶¶ 112–14. An interference claim can arise "[w]here the employee is not provided with the necessary information regarding the employer's FMLA leave policies, and the employee is denied the ability to conform a desired period of leave to the employer's policies so as to preserve the right to reinstatement," a crucial benefit of the FMLA. *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016).

Plaintiff argues that she was denied the opportunity to secure her reinstatement rights because Sergiyenko dissuaded her from taking FMLA leave, declined to give her FMLA compliant paperwork, and instead encouraged her to use the employer's PTO policy. Am.

Compl. ¶¶ 110–15.  Because Plaintiff did not undergo surgery until three months into her leave, she claims that she could have made alternative arrangements, such as taking intermittent leave before the surgery, if she had been made aware of her FMLA rights.  Pl. Opp. at 15–16.  S*ee also Donnellan v. N.Y.C. Transit Auth*., No. 98-CV-1096, 1999 WL 527901, at *4 & n.10 (S.D.N.Y. July 22, 1999) (holding that "where an employee uses leave which might be counted as vacation time, FMLA leave, or both, an employer's failure to provide notice that the leave counts against the FMLA allotment might interfere with the employee's ability to plan and use future FMLA leave to, for example, schedule elective surgery and recuperate from the surgery").

Drawing all inferences in her favor, Plaintiff has plausibly alleged that Sergyienko's failure to provide her with the necessary information regarding Current's FMLA leave policies denied her the opportunity to arrange her leave in a way that would have secured her right to reinstatement when she was able to return to work.

### 2.   Plaintiff Has Stated a Claim for Retaliation Under the FMLA Against Current and Sergiyenko

Defendants argue that Plaintiff failed to state a claim for retaliation under the FMLA, because Plaintiff's termination was unrelated to her taking FMLA leave and occurred as part of a companywide layoff.  Defs. Mem. of Law at 14–15.  Plaintiff counters that Sergiyenko admitted that she was chosen for termination because "her replacements had built relationships within the company while she was on leave."  Am. Compl. ¶ 3.  Defendants assert that Sergiyenko's comments do not establish a causal connection between the protected activity — seeking FMLA benefits — and the adverse action of termination.  Defs. Mem. of Law at 14–15.  According to Defendants, Plaintiff's FMLA leave ended three months prior to her termination and other employees "had shown themselves more useful" than Plaintiff, who had been on "three months of unprotected leave."  *Id*.

The Amended Complaint alleges that Sergiyenko cited Plaintiff's leave as part of the reason for her termination; that is adequate at the pleading stage to establish a causal connection between her attempt to take FMLA protected leave, which was categorized as PTO, and an adverse employment action. *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 514–15 (E.D.N.Y. 2018) (finding that plaintiff provided direct evidence sufficient to establish a causal connection where supervisor denied plaintiff's transfer requests because plaintiff took "excessive leave"); *see also Dupee v. Klaff's, Inc.*, 462 F. Supp. 2d 233, 243 (D. Conn. 2006) (finding explanation that plaintiff was being fired "because he had too many doctors appointments" to be direct evidence of retaliatory action).

Defendants will be free to establish what occurred and why at a later stage, but on the face of the pleadings, Plaintiff has adequately, albeit barely, pled a causal connection between her seeking FMLA leave and her termination. Accordingly, Current and Sergiyenko's motion to dismiss Count I is denied.

### 3. Plaintiff Has Not Stated a Claim for FMLA Interference or Retaliation Against Stuart Sopp in His Individual Capacity

An employee is subject to individual liability under the FMLA if the individual "exercises supervisory authority over the complaining employee" and was responsible in whole or in part for the alleged violation while acting in the employer's interest. *Noia v. Orthopedic Assocs. of Long Island*, 93 F. Supp. 3d 13, 17 (E.D.N.Y. 2015) (citation omitted). Individual liability "is not limited to those who grant or deny a leave but may extend to those who participate in retaliation for the exercise of FMLA benefits." *Ziccarelli v. NYU Hosps. Ctr.*, No. 15-CV-9307, 2021 WL 797668, at *8 (S.D.N.Y. Feb. 27, 2021).

Although Sopp, as CEO, may have exercised "supervisory authority" over Plaintiff, her FMLA claims against him fail because the Amended Complaint does not allege that Sopp was

directly or indirectly involved in the violations.  *See Smith v. Westchester Cnty.*, 769 F. Supp. 2d

448, 476 (S.D.N.Y. 2011) (dismissing claims against Department of Correction Commissioner in

his individual capacity, where complaint did not allege any specific conduct that would render

him liable under the FMLA); *Noia*, 93 F. Supp. 3d at 17 (dismissing claims against plaintiff's

principal in his individual capacity because plaintiff failed to allege principal's direct

involvement in alleged FMLA violation).

Sopp's motion to dismiss Count I as to himself is granted.

### C. Plaintiff's Section 1981 Claims

#### 1. Plaintiff Has Stated a Claim for Discrimination under Section 1981[5]

Defendants argue that Plaintiff has failed to state a claim for discrimination under Section

1981 because she has not plausibly alleged that her race or color was a motivating factor in her

termination.  Defs. Mem. at 17–18.  Section 1981, however, has also been interpreted to

"provide[] a cause of action for race-based employment discrimination based on a hostile work

environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (citation

omitted).  To state a claim for a hostile work environment under Section 1981, "a plaintiff must

show that the complained-of-conduct: (1) is objectively severe or pervasive; (2) creates an

environment that the plaintiff herself subjectively perceives as hostile or abusive; and (3)creates

such an environment because of the plaintiff's race."  *Goins v. Bridgeport Hosp.*, 555 F. App'x

70, 71–72 (2d Cir. 2014) (citations omitted).  The standard has both objective and subjective

components: the conduct must be so severe or pervasive that a reasonable person would find it

hostile or abusive, and the victim must subjectively perceive the work environment as such.

---

[5]        Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoined by white citizens."  42 U.S.C. § 1981.

*Littlejohn*, 795 F.3d at 321 (citations omitted).  The incidents complained of must be more than episodic; "they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id*.  In analyzing whether a hostile work environment exists, Courts must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id*.  (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff alleges that Sergiyenko repeatedly called her "an old Asian woman with no kids," an "old Asian Woman," and a "Korean Woman," "amounting to dozens if not hundreds of disparaging remarks."  Am. Compl. ¶¶ 59, 99–101.  She further alleges that during a companywide meeting, Sopp referred to her in degrading stereotypical terms.  *Id*. ¶ 105.  Defendants' Memorandum of Law in support of their Motion does not address Plaintiff's hostile work environment claim under Section 1981 and instead solely focuses on whether her termination itself was discriminatory.  Part of Defendants' argument that Plaintiff's termination was not racially motivated was that Sergiyenko "was a longtime friend and colleague of Plaintiff . . . who recruited her, hired her . . . [and] unquestionably knew Plaintiff's race," making it "impossible to draw a discriminatory inference."  Defs. Mem. of Law at 18–19.

At the motion to dismiss stage, Plaintiff has adequately pled that Defendants' continuous references to Plaintiff's race could constitute a cognizable claim for hostile work environment.  The Amended Complaint makes it clear that Sergiyenko repeatedly made comments referencing both Plaintiff's race and national origin.  It alleges that Sergiyenko described her as "an old Asian with no kids," seemingly as part of an effort "to put [Plaintiff] in her place and convey her place in Current's hierarchy."  Am. Compl. ¶ 59–60.  Sergiyenko's repeated comments

communicated to Plaintiff that he considered the race, sex, age, and familial status of his subordinates and was compelled to remind them of such.  A reasonable juror could conclude that Sopp's comment in a companywide meeting that "all [Plaintiff] does is laugh and nod her head and agree," referencing stereotypes of servile Asian women, was made to undermine Plaintiff's position at Current, especially as it was made in comparison to Sergiyenko's leadership.  *Id*. ¶ 105.

Plaintiff has adequately alleged that she subjectively perceived the work environment to be hostile.  Although merely referencing an individual's race may, on its face be race neutral, at the motion to dismiss stage, when evaluating within the context of the environment alleged at Current, "the comments [were] susceptible of being understood as harassment motivated by racial animus," and of the type that a reasonable person would find objectively hostile.  *See Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 254 (E.D.N.Y. 2016) (citations omitted).  Additionally, the Amended Complaint alleges that after Plaintiff complained about Sergiyenko's comments, an HR manager told her that Sergiyenko had "previously disparaged another employee for her ethnic background [and] was purportedly made to address" his behavior.  Am. Compl. ¶¶ 63–64.  Although Defendants argue that Sergiyenko "was a longtime friend" of Plaintiff's, making it unreasonable to draw a discriminatory inference against him, Defs. Mem. of Law at 18–19, the Court can only consider the allegations in the complaint; Plaintiff does not allege any prior relationship or friendship with Sergiyenko.  *See Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 170 n.1 (S.D.N.Y. 2023).

Construing the facts in the light most favorable to Plaintiff, the Court finds that she has adequately alleged a Section 1981 claim for a hostile work environment, given the "dozens if not hundreds of disparaging remarks" made about her race from the time she joined Current in June

2021 until she went on leave in August 2022.  Accordingly, Defendants' motion to dismiss Plaintiff's discrimination claim under Section 1981 (Count II) is denied.

### 2.   Plaintiff Has Not Stated a Claim for Retaliation under Section 1981

To state a claim for retaliation under Section 1981, a plaintiff must adequately allege that she "(1) engaged in an activity protected under anti-discrimination statutes, (2) the defendants were aware of [her] participation in the protected activity, (3) the defendants took adverse action against [her] based upon [her] activity, and (4) a causal connection existed between [her] protected activity and the adverse action taken by defendants." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001) (citation omitted).  A causal connection in a retaliation claim can be stated either directly by pleading allegations of "retaliatory animus directed against the plaintiff by the defendant" or indirectly by pleading facts that show a close temporal proximity between the protected activity and the adverse employment action. *Brightman v. Physician Affiliate Grp. of New York, P.C.*, No. 20-CV-4290, 2021 WL 1999466, at *8 (S.D.N.Y. May 19, 2021) (citation omitted).

Plaintiff claims that her report of Sergiyenko's discriminatory conduct to an HR Manager in Spring 2022 was causally connected to her termination.  Am. Compl. ¶ 62, Pl. Opp. at 24. This claim fails, however, because Plaintiff has alleged no facts that would allow the Court plausibly to infer that Sergyienko was aware of this report.  The Amended Complaint alleges only that the HR Manager revealed to Plaintiff that Sergyienko had previously disparaged another employee for her "ethnic background" and was purportedly "made to address his racist behavior with the employee."  Am. Compl. ¶ 63–64.

Even assuming Sergyienko had knowledge of Plaintiff's report, the Amended Complaint still falls woefully short of plausibly pleading a causal connection between Plaintiff's report of

discriminatory conduct and her subsequent termination.  Plaintiff speculates, with no facts to

support that speculation, that Defendants made the decision to terminate her upon learning about

her report to HR and then waited more than six months to discharge her under cover of

company-wide layoffs.  Pl. Opp. at 23–24.  A causal connection "may be established through

evidence of retaliatory animus directed against a plaintiff by the defendant, or by showing that

the protected activity was closely followed in time by the adverse action."  *Mullins v. City of*

*New York*, 626 F.3d 47, 53 (2d Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff has not proffered any "evidence of retaliatory animus" and the more than six–month gap

between the protected activity and the adverse employment action is simply too long to give rise

to a plausible inference that the events were causally related.  *See id*.  *See also Clark Cnty. Sch.*

*Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (holding a three–month period is too great to give rise

to an inference of causation).

    Defendants' motion to dismiss Plaintiff's retaliation claim under Section 1981 is granted.

### D.  Plaintiff Has Not Stated a Claim for Retaliation Under the EPA and the NYSPEL[6]

    Defendants move to dismiss Plaintiff's retaliation claims under the EPA and the

NYSPEL.  Because the standard for stating a federal EPA claim is the same as for stating a

NYSPEL claim, these claims will be analyzed together.  *See Brightman*, 2021 WL 1999466, at

---

[6]    The EPA prohibits employers from "discriminat[ing] . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [they] pay[ ] wages to employees of the opposite sex . . . for equal work," with equal work defined as "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  *Brightman*, 2021 WL 1999466, at *8 (quoting 29 U.S.C. § 206(d)(1)).

    The NYSPEL provides that "[n]o employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions."  NYLL § 194.

*8 (citation omitted) (noting that "federal EPA claims and [NYSPEL] claims are analyzed according to the same standards"); *Rose v. Goldman, Sachs, & Co., Inc.,* 163 F. Supp. 2d 238, 243 (S.D.N.Y. 2001) ("Claims for violations of the Equal Pay Act and the New York State Equal Pay Law may be evaluated under the same standard.").  To state a claim of retaliation under either statute, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant[s] knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Bir v. Pfizer, Inc.,* 510 F. App'x 29, 33 (2d Cir. 2013).

According to the Amended Complaint, Plaintiff complained to Sergiyenko about gender-based pay gaps on two occasions.  Am. Compl. ¶¶ 73–85.  Plaintiff first complained in January 2022 and then complained again in early 2022.  *Id.*  ¶¶ 73–77, 80–85.  Plaintiff claims that Defendants retaliated against her by discharging her in January 2023, well over six months after the last actionable complaint under the EPA.  Pl. Opp. at 23.  Although Plaintiff meets the first two elements of a prima facie claim, she fails to allege facts from which the court can plausibly infer that there was a causal connection between her protected activity and an adverse employment action.

Plaintiff alleges no facts that would allow the Court to infer animus regarding her EPA and NYSPEL complaints; instead, she relies solely on an inference of causation based on the temporal proximity.  For the same reason her Section 1981 retaliation claim fails, so too do her retaliation claims under the EPA and the NYSPEL.  The gap in time is simply too great to give rise to an inference that the events were causally linked.  Accordingly, Defendants' motion to dismiss Counts III and IV is granted.

### E.  Plaintiff Has Adequately Pled Violations of the NYSHRL and the NYCHRL

The Court has already found that Plaintiff adequately alleged claims of discrimination under the NYSHRL and the NYCHRL against Current.  *See supra*, pp. 6–11.  The Company's motion to dismiss with respect to Plaintiff's discrimination claims under Count V and VI is therefore denied.

#### 1.  Plaintiff Has Stated NYSHRL and NYCHRL Claims Against Sergiyenko and Sopp in Their Individual Capacities

Individuals can be held liable under both the NYSHRL and the NYCHRL, but the test to determine individual liability differs between state and city law.  *Chen v. Shanghai Café Deluxe, Inc.*, No. 17-CV-2536, 2023 WL 2625791 at *4 (S.D.N.Y. Mar. 24, 2023).  Under the NYSHRL, individual liability may be imposed if "(1) a defendant has an ownership interest in the employer or, alternatively, has the authority to hire or terminate its employees; or (2) if a defendant aided and abetted the unlawful discriminatory acts of others."  *Id.*  An individual, however, must "actually participat[e] in the conduct giving rise to a discrimination claim." *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 493 (S.D.N.Y. 2015).  Although the NYCHRL does not require an ownership interest or the authority to make employment decisions, a plaintiff must still show that the individual actively participated in the discriminatory conduct.  *See Malena v. Victoria's Secret Direct*, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).

Plaintiff brings her discrimination claims under the NYSHRL and NYCHRL against both Sergiyenko and Sopp.  There is no dispute that Sergiyenko, the Head of People who terminated Plaintiff, and Sopp, the CEO, had an ownership interest or decision-making authority at Current.  As described above, the Amended Complaint alleges discriminatory conduct by both.  Most of the alleged disparaging statements were made by Sergiyenko over the course of Plaintiff's employment, but even Sopp's single comment can suffice to allege a discriminatory motive.  *See*

*Williams*, 61 A.D. 3d at 80 n.30 ("One can easily imagine a single comment that objectifies women being made in circumstances where that comment would, for example, signal views about the role of women in the workplace and be actionable.").  Sopp's comment that "all [Plaintiff] does is laugh and nod her head and agree," plays on the stereotype of servile, Asian women and can reasonably be construed to signal his negative view of Asian women in the workplace.  Am. Compl. ¶ 105.

Plaintiff has adequately stated NYSHRL and NYCHRL claims against Sergyienko and Sopp in their individual capacities.  Accordingly, Defendants' motion to dismiss Counts V and VI is denied.

### 2.   Plaintiff Has Not Stated a Claim for Retaliation Under the NYSHRL and the NYCHRL

Retaliation claims brought under the NYCHRL and the NYSHRL are treated the same as retaliation claims under federal law.  *See Brightman,* 2021 WL 1999466, at *8; *McMenemy v. City of Rochester,* 241 F.3d 279, 283 n. 1 (2d Cir. 2001).  The NYCHRL is "slightly more solicitous" because "it only requires [a plaintiff] to show that something happened that was reasonably likely to deter a person from engaging in protected activity." *Rozenfeld v. Dep't of Design & Constr.,* 875 F. Supp. 2d 189, 208 (E.D.N.Y. 2012) (internal quotation marks and citation omitted).  As was the case with the federal claims, however, to survive a motion to dismiss a plaintiff must plead facts from which the Court can reasonably infer that there is a causal connection between the plaintiff's protected activity and the adverse employment action. *See Brightman*, 2021 WL 1999466, at *8.

Plaintiff's retaliation claims under the NYSHRL and the NYCHRL fail for the same reasons that her other retaliation claims fail.  *See supra*.  There are no facts alleged that suggest Sergyienko was aware of her complaints about his discriminatory behavior and the lapse of time

between any protected activity and her termination is too great to give rise to an inference that the termination was causally related to her protected activity.

Defendants' motion to dismiss with respect to Plaintiff's retaliation claims under Counts V and VI is granted.

### 3. Plaintiff has Stated an Interference Claim under the NYCHRL

The NYCHRL makes it unlawful "to coerce, intimidate, threaten or interfere with, . . . any person in the exercise or enjoyment of, . . . any right granted or protected" under the statute. N.Y.C. Admin. Code § 8–107(19).  In order to state a claim for interference, a plaintiff must allege "[t]hreats." *Roelcke v. Zip Aviation, LLC*, No. 15-CV-6284, 2018 WL 1792374, at *9 (S.D.N.Y. Mar. 26, 2018) (citation omitted).  *See also Sletten v. LiquidHub, Inc.*, No. 13-CV-1146, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014) (citation omitted) (holding that a "threat" is the creation of "[a]n impression of impending injury").

The Amended Complaint alleges that when Defendants learned that Plaintiff intended to file this action, they threatened to "seek sanctions against [her] for her forthcoming court filing," and threatened to countersue, claiming that she would be in breach of her confidentiality obligations if she disclosed salaries in her complaint.  Am. Compl. ¶¶ 159–165.  Out of an abundance of caution, Plaintiff omitted specific salary information from the complaint.  *Id*. ¶ 165 n.3.  Defendants do not address these allegations.

 Plaintiff's allegations that Defendants threatened to seek sanctions against her and to countersue were threats intended to coerce and intimidate her into not pursuing this litigation. Although courts "have no obligation to entertain pure speculation and conjecture," *Sletten*, 2014 WL 3388866, at *5 (citation omitted), the Court can reasonably infer that Plaintiff was

threatened inasmuch as she withheld any specific salary information from the Amended Complaint.  This claim is plausible enough to survive a motion to dismiss.

Defendants' motion to dismiss Count VI with respect to Plaintiff's interference claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is DENIED, and their motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. Specifically, the following claims survive Defendants' motion to dismiss:  Plaintiff's FMLA interference and retaliation claims against Current and Sergiyenko (Count I), Plaintiff's Section 1981 discrimination claim (Count II), Plaintiff's NYSHRL discrimination and harassment claim (Count V), and Plaintiff's NYCHRL discrimination, harassment, and interference claim (Count VI).

The Clerk of Court is respectfully directed to close the open motion at docket 33.  The parties are directed to inform the Court by February 19, 2024, whether they believe that a referral to the Court annexed mediation program or to the Honorable Stewart Aaron, United States Magistrate Judge, for a settlement conference would be helpful.  If not, the Court will schedule an initial pretrial conference.

**SO ORDERED.**

**Date:  January 22, 2024**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**